MARCUS SWAIN *v.* ORLIN TYLER.

*Book Account. Parent and Child. The parent liable for neces-saries furnished minor son, after contract, by which he gave the son his time, and publication of the same, in certain cases.*

Where the father had given his minor son leave to act for himself, and had made publication of the fact, and that he would not thereafter pay any debts of the son, and the son returned to his father's house sick, and the plaintiff's charges were for necessary medical services rendered the son, upon the credit of the father, and in good faith charged to him at the time, and the father knew of the services being rendered and did not object, *it was held,* that the law implies a promise to pay, though the father did not assent to the services being done on his credit, either expressly or impliedly, in fact.

XXVI     2

And *it was held,* that this rested· on the general ground, that while one's minor children remain a part of the father's family and household, and receive neces-'saries, with the knowledge of the father, and without objection, on his part, it is the same thing as if he received them himself, or his wife received them.

BOOK ACCOUNT. Judgment to account was rendered in the County Court, and an auditor was appointed, who reported the following facts:

That in September, 1848, the defendant made a contract with his minor son, Lewis Tyler, who was then about nineteen years of age, upon the consideration of twenty dollars, by which he relinquished to said son all the future earnings of said son up to his majority, and said son promised to take care of himself, and call upon his father for no further aid.

That in October, 1848, the defendant published in the Burlington Sentinel, a newspaper, which then circulated to some extent, in the town of Essex, where the parties resided, a notice, stating said contract, and stating that the defendant would not pay any debts of the son's contracting thereafter.

That Lewis, the son, in pursuance of said contract, left his father's house in Essex, and worked about on his own account in various places, until just before the time of the first visit of the plaintiff, in October, 1849, when the said Lewis was taken ill, and went to his father's, the defendant's house, and continuing ill, on the 17th day of October, 1849, in the absence, and without the knowledge of the defendant, sent one of his brothers, (another son of the defendant,) for the plaintiff, who was a physician. The brother thereupon went to the plaintiff's house, and the plaintiff being absent, left a general request for the plaintiff to come, professionally, to the house of the defendant, without stating who was sick. The plaintiff on his return soon after, received the message and went to the defendant's house and found the said Lewis ill, (the defendant being still absent at said first visit,) and administered to him as his necessities required, upon that occasion and the occasions stated in the account, in good faith, and upon the credit of the defendant, making said charges to the defendant from time to time.

That nothing was said between said Lewis and the plaintiff as to paying for said attendance, nor between the plaintiff and defendant, although the defendant was sometimes at home when the plaintiff came on said visits, nor did the defendant know that the

plaintiff was making the said visits on his credit, and that he did not assent to the same ; and the said Lewis had no authority in fact, to employ the plaintiff on the credit of the defendant.

That the plaintiff had no knowledge of the said agreement between said defendant and said Lewis, or of said notice published by the said defendant. That at the time the plaintiff made said visits, the said Lewis was a minor, about twenty years old.

The County Court accepted the report of the auditor, and rendered judgment thereon for the plaintiff.

Exceptions by defendant.

*Underwood & Hard* for defendant,

Insisted, that the relation existing between the defendant and his minor son, is not alone sufficient to make the former chargeable for the debts of the latter, even for necessaries.

To render the father liable on the contracts of the son, the same facts must be shown as would be required to charge any other persons, viz : that the son had authority, either express or implied, to pledge the credit of the father, or that the father afterwards assented to or adopted the contract ; and whether such authority or adoption was shown, was a question of *fact* exclusively within the province of the auditor. *Gordon* v. *Potter*, 17 Vt. 348. *Mortimore* v. *Wright*, 6 M. & W. 482. Bing. on Infancy, 87. (Note.)

*A. P. Hodges* for plaintiff,

Insisted, that to the performing of the services, for which a recovery is sought, the assent of the defendant most clearly appears ; and the court have but to sustain the doctrine laid down in the 17th Vt.

From the report, circumstances appear which fully justified the plaintiff in presuming that he was in the employment of the defendant, and these circumstances were within the knowledge of the defendant, and it was incumbent upon the defendant to have *rebutted* the presumption of his assent in some manner, either by word or deed, if he desired to throw off his liability.

The case shows, that the *credit* was given *exclusively* to the defendant, in good faith.

The opinion of the court was delivered by

REDFIELD, Ch. J.   The only question here is, whether the plaintiff can recover for medical attendance upon defendant's minor son, who was at the time at his house sick, the defendant having given him leave to act for himself, and having made publication of the fact, and that he would not thereafter pay any debts of the son.   The report states that the plaintiff's charges were for necessary services rendered the son upon the credit of the defendant, and in good faith charged to him at the time.   The father knew of the services being rendered, and made no objection, but did not, as the auditor says, assent to their being done on his credit, either expressly or impliedly, in fact.

Under these circumstances the only question is, whether the law implies a promise to pay—we think it does, on the general ground, that while one's minor children remain a part of his family and household, and receive necessaries, with the knowledge of the father and without objection, on his part, it is the same thing as if he received them himself, or his wife received them.   There was nothing in the case known to plaintiff, to raise any doubt of the defendant's being bound to pay, and expecting to pay, as there is when the patient is not a child, or is of age.   In such cases the father is not expected, as a matter of course, where he makes no objection, to assent to the services.   He may intend to pay, or he may not.   If the father, for any reason had taken it into his head, that he would not have the plaintiff attend upon his son, or not upon his credit, and the plaintiff had persisted, or had performed the services upon the credit of the son, and then attempted to charge the father, the case might merit a different consideration; but here it seems to us nothing exists to raise a doubt, that the plaintiff was fairly justified in performing the services, on the credit of defendant, and in supposing the defendant so understood the matter at the time.   The County Court seemed to have so viewed the matter, and this judgment is affirmed.